The next case on the call of the doctor this morning is agenda number 125203 People of the State of Illinois v. Sean Marlon Brown. Ms. Catherine Dorsch. Dorsch, on behalf of the people of the State of Illinois. You recall that in this case, the appellate court reversed the defendant's armed robbery conviction upon finding that the circuit judge had not exercised her independent discretion in finding him fit to stand trial. This Court should reverse that judgment, however, because the circuit court committed no error, much less plain error at all. We have to remember that a defendant in Illinois is presumed fit to stand trial and is entitled to a fitness hearing only if there's a bona fide doubt of the defendant's fitness. And here, as the record reveals, and we've reproduced the relevant portions of the record in the appendix to our brief, there simply was no bona fide doubt. And so the September proceedings in front of Judge Host, and I hope I'm pronouncing her name correctly, were not a fitness hearing, but instead just a status on the return of the fitness report. So during the August 2016 final pretrial, one week before the defendant's scheduled jury trial, defense counsel comes before the Court and said, Your Honor, you know, my client last night, he announced to me for the first time that he had a prior mental health issue that's resurfaced. He seems fine. We've been communicating fine. Any differences or difficulties seem to be more a matter of his education than anything else. But I'd really like to get a fitness hearing. Basically, I'm not an expert. I can't tell by looking at him. Can I get a fitness hearing? The State didn't object, and the Court ordered a fitness hearing. Obviously, the Court had to cancel the trial for the following week because they wanted to allow sufficient time for the judge to or the judge, the doctor, to conduct a fitness evaluation. So they set it up for 30 days for a status on the fitness report. So one month later in September, at the status hearing, defense counsel reminds the Court that they're there for a review of fitness, and he stands up and he says, I've filed a report before this Court and that the expert finds there's no reason to believe that my client is unfit in any way to stand trial, so please can we set this for a hearing? So the record simply shows there was no bona fide doubt fitness hearing, and the Court was not required to conduct a fitness hearing at all. So the September proceedings were not a fitness hearing at all. In this case, therefore, resembles Hansen. It's almost on all fours with Hansen, where the judge is allowed to, under Section B of the fitness statute, order a fitness hearing to determine whether there's a bona fide doubt. So it's a mere fact that an attorney requests a fitness evaluation or that a judge orders one. There's not established a bona fide doubt of the defendant's fitness. So for that reason, the circuit judge committed no error at all, because the September proceedings were not a fitness hearing. She had no obligation to make a determination on fitness or exercise her independent discretion in that respect. Even if the Court disagrees with us on the fitness question, however, we'd urge this Court to use the opportunity to remind the appellate court that retrospective fitness hearings are not impermissible simply because two years have passed or the defendant's fitness is not due to some single readily assessed factor. Roberts. Counsel, before you move on. True, back in 1990. Counsel, before you move on too far, can you comment on the State's failure to put the bona fide doubt issue in the PLA? I'm sorry? Can you comment on the State's failure to put the bona fide doubt issue into the PLA? Absolutely. Yes, Your Honor. We cited Artis and McCown for the point that the bona fide doubt issue is unquestionably, inextricably intertwined in the fitness question. You don't get to a fitness question unless there is a bona fide doubt. And my opponent doesn't dispute that. My opponent doesn't dispute that the reasons that we stated to excuse forfeiture in our brief are invalid. Instead, she interposes two new ones, neither of which has any merit, Your Honor, because the first is that somehow she argues that the State conceded below in the appellate court that there was a bona fide doubt of the defendant's fitness. That's simply not true. We've asked the appellate court clerk from the Third District to certify the briefs to this Court, so this Court should have them to be able to review that. But there's no concession in the State's brief that there was a bona fide doubt of the defendant's fitness. And the issue was never raised, so there's not even sort of an acquiescence. The parties and the court simply proceeded from the assumption that these September proceedings were a fitness hearing. Nobody, so the defendant never raised a bona fide doubt argument below that the State could have responded to. So the State can't be faulted at this stage for not having responded to an argument that the defendant just didn't make. Again, the appellate court graded the wrong remedy here. The question is not whether the fitness, unfitness of a defendant results from some single readily identified factor, but instead whether the defendant's fitness at the time of trial can be fairly established based on the record. And here we have sufficient record. We have the contemporaneous fitness evaluation from Dr. Klor. We also have defendant's trial testimony. Defendant testified at trial on behalf, on his behalf, and he gave a statement in elocution at sentencing. So there is sufficient record here to determine that the defendant was fit to stand trial. So for these reasons, the proper remedy is a retrospective fitness hearing. We think the record is sufficient to make that determination, but even if it weren't, the remedy is that if the circuit court were to find on remand that it weren't sufficient, the remedy would be to order a new trial at that point. But the point is that there's sufficient record here to send it back for the circuit court to make that determination in the first instance. And if the Court has no further questions, I'd reserve the remainder of my remarks for both. Thank you. Ms. Brandon. Good morning, Your Honors, and may it please the Court, Counsel, my name is Emily Brandon and I'm an Assistant Appellate Defender representing Sean Brown. The Appellate Court rightfully determined that the fitness hearing in Mr. Brown's case was constitutionally deficient and ordered a new trial, and we are asking Your Honors to affirm that decision today. The State, for the very first time in this Court, has argued that Mr. Brown was not entitled to a fitness hearing at all because Judge Corey never made an express finding of a bona fide doubt, but the State has forfeited and weighed this argument. For a defendant to be entitled to a fitness hearing, there must be a bona fide doubt as to his fitness. In the Appellate Court, Mr. Brown argued that the fitness hearing to which he was entitled was deficient. In response, the State argued that the hearing was not deficient. The State never challenged Brown's entitlement to a fitness hearing, and in failing to challenge this threshold factual issue, the State implicitly conceded that the threshold had already been met. Counsel, as a general proposition, if there's a request for evaluation, is a fitness hearing, a full fitness hearing, required? Under Hanson, just the request in and of itself, no. But here, again, and that speaks to the broader point here is that even if this Court disagrees and does not hold the State to its concession, that the record establishes a bona fide doubt. Here. Specifically, this case is factually distinguishable from People v. Hanson. And what makes it so is that Hanson said, you know, absent other evidence, this Court's not going to assume that the judge's granting a request for a fitness evaluation equates to a judge's finding of bona fide doubt. But here there is other evidence. Specifically, Brown, Mr. Brown was hearing voices, and he was having trouble communicating with counsel. And both of these indicate a potential inability to participate in his defense. And he, what's also important here is that he was hearing voices despite apparently being on medication for his, for his mental problems. And I'm going to disagree with a point that opposing counsel made, and that is that this was not the first time that counsel had learned that Mr. Brown had a mental, a diagnosed mental illness, but it was the first time that Mr. Brown had communicated to him that that mental illness was interfering with his ability to communicate with counsel. And again, the fact that Mr. Brown had mentioned his mental health problems before and counsel did not bring it to the attention of the Court suggests that something was different this time. And again, this happened very shortly before trial. It was eight days before trial, and defense counsel was ready to proceed. And Judge Corey was the one who moved it off of the trial calendar, which would have been unnecessary if Judge Corey himself did not have a bona fide doubt. And part of what makes this case difficult is that the parties here kind of conflated asking for a fitness evaluation and a fitness hearing itself. And that's clear in the language that counsel used when speaking to the Court. He asked for a determination that the defendant was fit, which can only be made at a fitness hearing. And again, Judge Corey granted that request. And so the imprecision in the language here doesn't mean that no bona fide doubt was found, especially because the surrounding circumstances indicate that there was a bona fide doubt and that Mr. Brown was entitled to a full fitness hearing. And again, this is a threshold issue. And that is why the State implicitly waived it, because they didn't argue in the Court below or in their PLA that Mr. Brown had failed to meet this threshold inquiry. They implicitly conceded that the threshold had already been met. And again, we ask that this Court hold the State to its concession. Now, for the second part of my argument, Judge Hoos didn't exercise any independent judicial discretion here. In making a fitness determination, judges must be active and not passive. And Judge Hoos here was entirely passive. And it's really important to note here that this was the first and only time that Judge Hoos had seen Mr. Brown. She only presided over the case for this one day. And so she didn't have any outside data or information to go beyond this report, which it's not even clear that she actually read. She asked no question, no questions of Brown, and offered no discussion of the report itself or of the doctor's opinion. And again, this was the only time that she had presided over the case. She had no experience with Mr. Brown of her own. What are we to make of defense counsel, I'm trying to pull up the exact words, but saying the report says he's fit and we're asking to set this on the trial coroll and basically not raising the issue, waiving the solution for him? Yes, and I think that that is problematic here. Defense counsel definitely dropped the ball in some respects. Because as I highlight in my brief, this wasn't, it wasn't as unequivocal as defense counsel made it seem to the court. There were questions in this report and there are portions of it that are a little bit vague and ambiguous. And again, that also speaks to, I believe that that supports the conclusion that Judge Hughes didn't actually read the report. Because it seems that the sense one gets from reading this is that all of the players here, the judge, the State, and the defense lawyer, did not think there needed to be a fitness hearing. But again, I believe that there is some conflation in between what, or I guess some lack of clarity as to what their obligations actually are. And I know that the statute has these two different provisions, but that doesn't seem to be the way that it operates in the court, that there is this conflation of these, of these two sections. And again, defense counsel, when he asked in the first place, he asked for a determination of the defendant's fitness. The law says that that has to be a judicial determination. And whether or not counsel misunderstood what the obligations were, it doesn't matter. That, the judge should have understood what her obligations were. Sotomayor, so then any time counsel asks for an evaluation, there has to be a full fitness hearing. Not necessarily. I am saying in, in this specific context, where defense counsel gives specific facts that are temporarily related to what is happening immediately. That, that is something, that's another way that Hansen is factually distinguishable from here. In Hansen, defense counsel filed basically a boilerplate motion, said that, yes, I have a bona fide doubt as to my client's fitness, but didn't give any reason for why that bona fide doubt existed. I mean, counsel, defense counsel doesn't want to ask for an evaluation on every defendant. Assumedly, you don't ask for an evaluation unless you have some reason to believe that it's appropriate. I mean, so. Correct. And if the judge. You're concerned about, you know, you're saying, well, they said this and that in this case, okay. But in every case where they ask for an evaluation, there's got to be something. Sure. Absolutely. And it's up to the judge to decide, okay, I counsel, I agree with you that there are doubts about the fitness here and that we need to have a fitness hearing, which is what happened here. And there's also the scenario in which the judge says, I don't know that that bona fide doubt threshold has actually been met. So, you know, I'm going to order an evaluation and we'll go from there. And that, the judge also didn't say here. Well, I don't agree that there is a bona fide doubt, but I'm going to order an evaluation to see if we can move forward. The judge didn't say that either. So the judge has to say that. I believe, yes, it would be best practices for the judge to say that, to make it absolutely clear. So there is no ambiguity as to what is going on. Counsel, with regard to that, defense counsel said he doesn't have the ability to make the determination whether it needs evaluation. But then, as you mentioned, in response to Justice Garmon's question, the judge didn't say anything. It just asked the State if they objected. Correct. And since there was no objection, the court ordered it. But, you know, as you said, there's two sections. And it wasn't specific which section was being, the evaluation was taken under. Again, and you're right, it's not explicitly stated in the record, but the surrounding facts and circumstances, again, .28 proceeding under Section A. Because there are two different, there really are two different examinations here, under the sections, two different sections, two different kinds of examinations. Correct. And again, in the report says that this is, that the report was ordered to make a determination as to whether or not the defendant was fit to stand trial. Not whether or not there was a bona fide doubt as to his fitness to stand trial. And I believe that that thing, which is in the overview of the report, let me double check that. And then there was a different judge, actually? Yes, and there was a, it was a different judge that ordered the report versus the judge that was, that presided over the fitness hearing here. And again, that matters in terms of the judicial discretion. Because Judge Hughes didn't have anything except the report itself. And the law says that judges have to be active, not passive. They can't simply rely on a stipulation as to the report's conclusions, which is absolutely precisely what happened here. And again, to counsel's point about sending it back for a retrospective hearing, because we have this report. Well, yes, the report was the only evidence offered at this hearing. But it wasn't the only evidence available at that time. And the other evidence, and what I mean by that is, are things like Mr. Brown's response to questions. The lack of questioning here by the judge, even of defense counsel, is lost information. Brown's answers to those questions could have given the judge more data with which to make her determination. But Mr. Brown never even spoke during the hearing. Counsel, isn't the lack of information really an ineffective assistance of counsel claim and not tied to this? I mean, the counsel said, we're stipulating to the report, that's all that's before the judge. So if this was, in fact, a fitness hearing, the only thing before the judge at that time was the report. I understand what you're saying. And also, the judge has a responsibility and an obligation here as well. To, again, to not be passive and to not simply accept that. Right, right, right. We're talking about remedy now. We're past the part that the judge made a mistake. Yeah. And so now we're at, what do we do? And all the parties came before this judge and said, here's the report. We want you to review it. If the judge had indicated, I've reviewed the report fully and made findings, we might not be here. Right. Right. So why? I mean, you're talking about other evidence. The only evidence before, just like the Cook case, I believe it was, the only evidence was the report. So that's why it went back for a retrospective fitness hearing. But that would just be replicating the deficient hearing all over again, if all that is considered is the report. And my point is that there is, there was information. Fitness, the question of fitness can be fluid. And that information can't be, again, replicated. There are all sorts of nonverbal things that could have indicated that perhaps Mr. Brown didn't actually understand what was happening or would have had difficulty communicating with counsel. For instance, in the report, it's, Dr. Floor recommended that counsel provide education and reminders. But the report itself didn't explain whether or not Mr. Brown's understanding of the proceedings was dependent on these education and reminders. Defense counsel was never asked whether having to provide these periodic reminders and education would interfere with his ability to represent the defendant. And, again, that leaves open the question, so if you, if the, these reminders and education is needed, and that does interfere with defense counsel's ability to represent the defendant, then that means that there is, the defendant's ability to participate in his own defense is affected. And these, again, are questions that are left open. The report itself doesn't say whether or not, you know, the voices would have continued throughout trial and whether or not that would have affected Mr. Brown's ability to communicate with counsel. There are all sorts of questions here that are left open. And it's not as if, it's not as if it's a psychotropic medication case. And, again, the, this Court has never found that where a defendant is constitutionally entitled to a fitness hearing, that a retrospective hearing is an adequate remedy. And it's, Your Honor should decline to find that in this case. The remedy of a retrospective hearing arose out of this Court's psychotropic medication jurisprudence. In regards to the statute that said where a defendant is receiving psychotropic medication under medical direction, he or she is entitled to a hearing on the issue of fitness while under the medication. Early on, this Court didn't make a distinction between the failure to hold a fitness hearing in a medication case, because the defendant was on medication, and the failure to hold a fitness hearing because there had been a finding of bona fide doubt. And in essence, this Court equated the ingestion of psychotropic medication to a bona fide doubt as to fitness. But in People v. Burgess, this Court changed course and carved out a limited exception for retrospective hearings where the issue was the defendant's ingestion of psychotropic medication. And I think it's also important to note that in the cases where this Court has discussed retrospective hearings, it's never been as a remedy. Those hearings have already happened as a result of the case being sent back. And again, the reasoning in the psychotropic medication cases is that there is no due process right if there's no finding of bona fide doubt. Right? So, but where there's a bona fide doubt is the defendant's fitness. It means that the defendant is potentially unfit. And so the failure to have an adequate hearing is the violation of due process, because it means the defendant is proceeding to trial when he or she is potentially unfit. And it is that potential that is enough to require a new trial. Now, opposing counsel in her response brief and in her opening brief cited, you know, the language from People v. Mitchell. And the cases, including People v. Cook, that the State cites in support, also quotes this language, that retrospective hearings are now the norm. But that language has been taken out of context. And it's clear when viewed in the context of Mitchell itself, it was specifically referring to medication cases. Because if retrospective hearings are normally inadequate to address a deprivation of rights, then it's problematic if retrospective hearings are the norm. And so the only way to square those two ideas together is to hold Mitchell to the statute to apply to only these psychotropic medication cases, which, again, is what that line of cases has done. Counsel, if I could just ask you, on the PLA issue, do you agree that the bona fide doubt issue is inextricably intertwined with the adequacy of the hearing? I don't know. Inextricably intertwined, I believe it's a threshold issue, absolutely. And, again, that supports why this Court should hold the State to its waiver. Because the State below agreed that the threshold had already been met. It never challenged that the threshold was never met. It's a threshold issue. And, again, it's precisely why the State should be held to their waiver. And, again, in medication cases, the reason why a retrospective hearing is adequate is because, again, it's not a question of whether the defendant's medical history is consistent with the defendant's medical history. That's important. Because in those cases, there's a single one single easily answered inquiry, and that's whether, and that is the effect of the medication on the defendant's mental functioning. The nature of the proof in those cases is constant. And by nature of the proof, I mean the chemical properties of the medication and the defendant's medical history. And that's not the case here. A fitness, like I said, the fitness evaluation wasn't the only information available, especially because the question of fitness can be fluid. The report itself was unreliable on its face, and it left questions open. Again, it didn't explain whether Brown's hallucinations would continue during trial or explain how they would impact his ability to work with his attorney. And all of these lost questions, that's all lost information that can't be replicated at a retrospective hearing, especially here where the defendant has documented memory problems. Additionally, the remedy of a retrospective hearing places an additional burden on the defendant to prove a due process violation. It's, in a sense, forcing the defendant to prove that violation twice. The error here was a trial with a potentially unfit defendant. And that's not something that a retrospective hearing can remedy. The only remedy is a new trial. And for those reasons, if Your Honors have no more questions, we would ask that Your Honors affirm the appellate court decision. Thank you, Mr. Brando. Thank you. Ms. Dorff. When it comes to factual matter, my opponent suggests that the attorney had heard about his client's mental illness before, and it really doesn't – I think a fair reading of the record, and if you look at page 12 of the People's Appendix, defendant's counsel says this is the first time I've heard of it since I've been representing him. So it may be, you know, that one could interpret counsel's, you know, what counsel knew, but certainly we have a fair interpretation of what counsel knew at the time because he represented the court. This is the first time, the night before he was coming into the August hearing, this is the first time we heard that he was having, again, the same problems that he had that were resurfacing for him. On the forfeiture or waiver or concession question, there simply is no concession. At this point, maybe it's helpful to point out that the attorney general didn't represent the people in the appellate court below. And so when we got the record and review it, we've read it and believe that the fairest reading of this record reveals that there simply was no bona fide death determination, and therefore the September proceedings simply were not a fitness hearing, nor should they have been construed as such. And for the reasons I gave in my answer to Justice Perks' earlier question about forfeiture, this Court should not bar the State from raising that argument before this Court. And I neglected to give another reason. It's that this Court often excuses forfeiture when it wants to maintain a uniform body of precedent. And we feel very strongly that this case is just like Hansen. And so it would be odd, indeed, for the Court to enforce the forfeiture and come out a different way on facts that are virtually the same as Hansen. As to bona fide doubt, it's the fact that the defendant was hearing voices, according to his counsel, doesn't establish a bona fide doubt. Remember, fitness is a question distinct from mental illness. It's a distinct question from whether he was hearing voices. The fitness question asks whether he can understand the nature of the proceedings and whether he can consult with his counsel in his defense. And so one can be mentally ill in many different ways and still be fit to stand trial. So the mere fact that the defendant was, according to him, hearing voices again does not establish a bona fide doubt in his fitness. Counsel was right, though, upon hearing this, to request a fitness evaluation to determine whether there was a bona fide doubt. But when it came back 30 days later and the expert said there was no reason to believe that he was unfit, and counsel said, okay, we've looked at it. The expert says there's no reason to believe my client is unfit in any way, and I'd like to set it on the jury calendar. Counsel suggests that maybe defendant's attorney made some mistakes here, but there's no ineffective assistance claim at play here. There's never been an ineffective assistance of counsel claim here. Isn't it more of the judge, though, not really reading it, perhaps, or commenting on the evaluation that is an issue, that the judge hasn't made a judicial determination of whether this man should have an evaluation of fitness hearing? I'm sorry. Does the judiciary have to make a finding of that? They stipulate it, too, as opposed to the judicial. Oh, the stipulation. Okay. So, yeah. So we believe, again, the fairest reading is that that September proceeding was not a fitness evaluation. But we do make an alternative argument that if you disagree with that first argument and you think that that September fitness hearing was, that the September proceeding was a fitness hearing, we think the Defendant Justice and Appellate Court really has the better view of it, because the Appellate Court relied on this one remark, and this is at page 21 of our appendix, relied to, on this remark in the foremark order, by agreement defendant fit to stay in trial, but it did so due to the exclusion of other evidence that suggested that the judge did exercise their independent discretion. For example, in the same order, it says fitness report received. Parties stipulate to the contents of the report. The contents, again, not to the expert's opinion. There's also contemporaneous evidence in the record when it comes back. This is on page 18 of our appendix. And the Court says, okay, well, the Court acknowledges receipt of the report with the findings contained therein and acknowledges stipulation that if called to testify, the doctor would testify consistent to the report. So we think that other information gives context and that the appellate majority below urge in relying on that one distinct portion of the written record in finding that the judge did not exercise his discretion. Finally, as to remedy, many of these retrospective fitness issues came out in these psychotropic medication cases simply because of the way the statute was written at the time. There was some question about whether the legislature, when the legislature said you had to have an evaluation if you were taking psychotropic meds, did the legislature intend to equate the ingestion of psychotropic medication with the bona fide doubt? And there was some back and forth. But by the year 2000, this Court had settled that and said no. You know, had jettisoned the automatic reversal rule. And in the case we cite in our brief, Peaceful v. Neal, this Court reversed, remanded for a retrospective fitness evaluation, a retrospective fitness hearing, I'm sorry, 15 years after the defendant's trial. The question, again, is whether we can make a fair determination based on record or based on the record evidence. And here we have a very good idea about what his defendant's medical condition was and whether he was fit, because we have an almost contemporaneous fitness evaluation from the expert, as well as I mentioned earlier, his trial testimony. And so cues that you can get from his demeanor at trial and as well as his sentencing. And the Federal courts also apply the same standard. I point out that this is not something that's new. The question is always whether we can make a fair assessment of the defendant's fitness at the time of trial. We cited several Federal cases in our brief that apply the same standard. If the Court has no further questions, we'd ask that this Court reverse the appellate court's judgment and affirm defendant's conviction. Thank you. Ginsburg. Case number 125203, People, State of Illinois v. Sean Marlin Brown, known as case number 4, will be taken under advisement. Counsels, Ms. Dorsch and Ms. Brandon, thank you very much for your arguments this morning.